USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  May 16, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                            :

XIOMARA HAYES,             :
                            :

              Plaintiff,   :       12 Civ. 1357 (KPF)
                            :

            v.                :       OPINION AND ORDER
                            :

THE DEPARTMENT OF EDUCATION OF   :
THE CITY OF NEW YORK,         :
                            :

             Defendant. :
                            :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

     Pending before the Court is Defendant's motion to dismiss Plaintiff's

Amended Complaint for failure to state a claim.  As explained below, the

motion is granted.

## BACKGROUND[1]

### A.    Factual Background

     In 2009, Plaintiff Xiomara Hayes worked as a special education teacher

at Humanities Preparatory Academy at 351 West 18th Street in Manhattan.

(Am. Compl. ¶ 10).  Plaintiff alleges that Defendant Department of Education of

the City of New York violated the False Claims Act, 31 U.S.C. §§ 3729-3733, by

receiving federal funding for special education services and then illegally using

those funds for other purposes.  (*Id.* at ¶ 11).

---

[1]    The facts are drawn from the Amended Complaint ("Am. Compl.").  For convenience, the Court will refer to Defendant's opening brief as "Def. Br."; Plaintiff's opposition brief as "Pl. Opp."; Defendant's reply brief as "Def. Reply"; and the transcript of the hearing held on July 12, 2013, as "7/12/13 Tr."

## B.    Procedural Background

Plaintiff filed a *qui tam* Complaint in this action on February 23, 2012. (Dkt. #1).  As is always the case with *qui tam* actions, the Government was notified of Plaintiff's filing and the Complaint remained sealed while the Government considered whether to intervene and prosecute the action.  (Dkt. #7).  On October 3, 2012, the Court[2] ordered the Complaint to be unsealed. (Dkt. #6).  Plaintiff moved for additional time to serve Defendant on February 1, 2013 (Dkt. #9-12), and again on April 1, 2013 (Dkt. #13-14); both motions were granted on April 1, 2013, permitting Plaintiff until April 22, 2013, to effect service (Dkt. #15).  On April 16, 2013, Plaintiff filed an Amended Complaint, once again stating a single claim for relief regarding violation of the False Claims Act.  (Dkt. #16).[3]

On June 18, 2013, Plaintiff's counsel moved to withdraw from the case. (Dkt. #21).  The Court set a conference for July 12, 2013, to discuss the motion to withdraw.  (Dkt. #24).  Plaintiff appeared personally, along with her counsel and counsel for Defendant.  Moreover, Plaintiff was accompanied by separate counsel, who represented to the Court that she was at that time appearing on Plaintiff's behalf (7/12/13 Tr. 12:20-23, 13:23-14:2), and would shortly put in

---

[2]    This action was at that time before the Honorable George B. Daniels, United States District Judge for the Southern District of New York.  It was transferred to the undersigned on June 20, 2013.  (Dkt. #22).

[3]    The Amended Complaint made almost no changes to the original Complaint.  It removed any indications that the original Complaint had been filed under seal, included the action's docket number, fixed certain small typographic errors (*compare* Am. Compl. ¶ 10, *with* Compl. ¶ 10), removed a single sentence from one paragraph in the factual recitation (*compare* Am. Compl. ¶ 15, *with* Compl. ¶ 14), and introduced a single numbered paragraph in the factual matter restating and expanding upon that sentence (Am. Compl. ¶ 14).

a notice of appearance formalizing her representation (*id.* at 14:7-8).  After some discussion of the issues involved, the Court granted the motion to withdraw and imposed a 45-day stay in the proceeding to permit Plaintiff to prepare to proceed with new counsel.  (Dkt. #25).

On August 28, 2013, Plaintiff wrote the Court explaining that she had been unable to retain counsel.  (Dkt. #27).  The parties returned for a pre-motion conference on September 18, 2013, preparatory to the motion to dismiss currently before the Court.  That same day, Plaintiff filed an application for *pro bono* counsel.  (Dkt. #28).  The Court granted that application, but explained that it could not guarantee when (or even if) any attorney would volunteer to represent Plaintiff, and that she would be held to the briefing schedule previously ordered.  (Dkt. #29).

Defendant filed a motion to dismiss on November 18, 2013.  (Dkt. #34-35).  Plaintiff filed an affidavit in opposition on December 27, 2013 (Dkt. #36), and Defendant replied on January 6, 2014 (Dkt. #37).

Plaintiff wrote the Court on January 31, 2014, to relate that an attorney had contacted her to discuss taking the case *pro bono*, but had ultimately decided against doing so.  (Dkt. #38).  Thereafter, the Court reached out to the Office of Pro Se Litigation and requested that another effort be made to canvass for available attorneys potentially interested in taking on Plaintiff's representation.  One month later, the Office of Pro Se Litigation advised the Court that, despite extraordinary efforts, it had been unable to locate *pro bono*

counsel to represent Plaintiff.  (Dkt. #39).  Accordingly the Court at that time

turned to consider Defendant's pending motion with Plaintiff proceeding *pro se.*

## DISCUSSION

**A.    Applicable Law**

**1.    Motions to Dismiss Generally**

The Court must consider a motion to dismiss by "'construing the

complaint liberally, accepting all factual allegations in the complaint as true,

and drawing all reasonable inferences in the plaintiff's favor.'"  *Chase Grp.*

*Alliance LLC* v. *City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010)

(quoting *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  "'To

survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face.'"

*Kelly*, 716 F.3d at 14 (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)).  "A

claim has facial plausibility when 'the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.'"  *Spataro* v. *Glenwood Supply*, 479 F. App'x 403,

404 (2d Cir. 2012) (summary order) (quoting *Iqbal*, 556 U.S. at 678).

Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to

include in her complaint "a short and plain statement of the claim showing

that the pleader is entitled to relief...."  Fed. R. Civ. P. 8(a)(2).  The Supreme

Court has explained that the Rule requires only that "[s]uch a statement must

simply 'give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests.'"  *Swierkiewicz* v. *Sorema N. A.*, 534 U.S. 506, 512

(2002) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957)).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Id.*  Nonetheless, "[t]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (quoting 5 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-236 (3d ed. 2004)) (second, third, and fourth alterations in *Twombly*).

"Rule 8's 'liberal pleading principles' do not permit dismissal for 'failure in a complaint to cite a statute, or to cite the correct one....  Factual allegations alone are what matters.'"  *Wynder* v. *McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) (quoting *Northrop* v. *Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997)) (alteration in *Wynder*).  Dismissal for failure to include a statement of claim pursuant to Rule 8 "'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'"  *Id.* at 80 (quoting *Salahuddin* v. *Cuomo*, 861 F.2d 40, 42 (1988)).  Indeed, the Second Circuit has held that it will "it will generally be an abuse of discretion to deny leave to amend when dismissing a nonfrivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8."  *Salahuddin*, 861 F.2d at 42.  "Further, if the court dismisses the complaint for failure to comply with Rule 8, it should generally give the plaintiff leave to amend.  This is especially

true when the complaint states a claim that is on its face nonfrivolous."
*Simmons* v. *Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995).

### 2.    The False Claims Act

The False Claims Act ("FCA") prohibits false claims against government funds.  31 U.S.C. § 3729.  Under the FCA, "individuals are authorized to 'bring a civil action for a violation of [the Act] for the [complaining] person and for the United States Government.'" *United States ex rel. Kreindler & Kreindler* v. *United Technologies Corp.*, 985 F.2d 1148, 1153 (2d Cir. 1993) (quoting 31 U.S.C. § 3730(b)(1) (1988)) (alterations in *Kreindler*).

A party, often termed a "relator" in this context, *Kreindler*, 985 F.2d at 1153, may commence an action by filing a *qui tam* complaint, 31 U.S.C. § 3730(b)(1).  After the action is brought, the complaint must remain sealed for at least 60 days, *id.* § 3730(b)(2), and the Government may extend the duration of the sealing period by applying to the court and showing good cause, *id.* § 3730(b)(3).  "The action is brought in the name of the government, and the government may either intervene and prosecute the action, or allow the original plaintiff — the *qui tam* relator — to proceed with the suit under § 3730(b)(4)(B)."  *Kreindler*, 985 F.2d at 1153 (internal citations omitted). "Whether or not the government joins in the action, the relator is entitled to a portion of the proceeds if the prosecution is successful."  *Id.*

"While relators indisputably have a stake in the outcome of False Claims Act *qui tam* cases that they initiate, 'the Government remains the real party in interest in any such action.'"  *United States ex rel. Mergent Servs.* v. *Flaherty*,

540 F.3d 89, 93 (2d Cir. 2008) (quoting *Minotti* v. *Lensink*, 895 F.2d 100, 104 (2d Cir. 1990)).  "Because relators lack a personal interest in False Claims Act *qui tam* actions, … they are not entitled to proceed *pro se*."  *Id.*

## B.    Analysis

There are two issues implicated by the present motion.  The first is whether Plaintiff may maintain a *qui tam* action proceeding *pro se*.  The second is whether Plaintiff has pleaded a retaliation claim and, if not, whether she may now amend her pleading to include one.  For the reasons set out below, the answer to both questions is no.

### 1.    Qui Tam

It is settled law in this Circuit that *qui tam* actions may not be maintained by a plaintiff proceeding *pro se*.  *Flaherty*, 540 F.3d at 93.  For this reason, the Court stayed this action, granted Plaintiff's application for *pro bono* counsel, and urged the Office of Pro Se Litigation to continue seeking *pro bono* counsel to take up Plaintiff's representation, even when it seemed no such counsel was available.  Plaintiff is not now represented and so cannot maintain a *qui tam* action, as she acknowledges herself in her opposition to Defendant's motion to dismiss.  (Pl. Opp. 1).  Accordingly, Defendant's motion to dismiss is granted in this respect.  *See Klein* v. *City of New York*, No. 10 Civ. 9568 (PAE) (JLC), 2012 WL 546786, at *5 (S.D.N.Y. Feb. 21, 2012) ("Klein, as a *pro se* plaintiff, lacks standing as a relator in a *qui tam* action pursuant to the FCA."), *appeal dismissed* (May 7, 2012).

### 2.  Retaliation

The second and more difficult question is whether dismissal of Plaintiff's FCA *qui tam* claim must result in dismissal of the action as a whole.  Plaintiff submits in her opposition brief that she should be permitted to "pursue retaliation claims" because "a plaintiff has a right to include retaliation claims as part of the False Claims Act Lawsuit."  (Pl. Opp. 1).  There is no question that if Plaintiff has properly pleaded a claim for retaliation, she is permitted to do so irrespective of the fate of her FCA *qui tam* claim.  *See* 31 U.S.C. § 3730(h)(1) (creating a cause of action for retaliatory workplace discrimination against whistleblowers); *see also United States ex rel. Sasaki* v. *New York Univ. Med. Ctr.*, No. 05 Civ. 6163 (LMM) (HBP), 2012 WL 220219, at *12 (S.D.N.Y. Jan. 25, 2012) ("Furthermore, a relator need not prevail on his or her FCA claim in order to recover for retaliation under 31 U.S.C. § 3730(h)."); *United States ex rel. Sarafoglou* v. *Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 624 (S.D.N.Y. 2006) ("'Therefore, an employee's activities may be protected even where an FCA suit has not been filed.'" (quoting *Faldetta* v. *Lockheed Martin Corp.*, No. 98 Civ. 2614 (RCC), 2000 WL 1682759, at *12 (S.D.N.Y. Nov. 9, 2000))).

#### a.  A Retaliation Claim, If Already Pleaded, Would Be Timely

To begin with, Defendant argues in its reply brief that Plaintiff's retaliation claim would be time-barred even if pleaded in the first place. Defendant relies as authority for this proposition on *United States* v. *The Baylor Univ. Med. Ctr.*, 469 F.3d 263 (2d Cir. 2006).  Defendant contends that the

statutes of limitations relevant to Plaintiff's claims were tolled when her original complaint was actually served on Defendant, not when it was filed.  (Def. Reply 3-4).  Defendant is wrong.  Significantly, Defendant does not distinguish between *Baylor*'s two distinct holdings.  The first, relevant here, concerns when a *qui tam* complaint tolls the relevant statute of limitations.  The second, addressed below, concerns the very different question of when an amended pleading may relate back to a prior pleading for statute of limitations purposes.

*Baylor* answered the first question by holding that when the Government had intervened in a *qui tam* action and filed a complaint-in-intervention, the FCA's statute of limitations was tolled only when the ultimate complaint-in-intervention was filed, not when the original *qui tam* complaint was filed. *Baylor*, 469 F.3d at 268.  Second, *Baylor* concluded that a complaint-in-intervention could not relate back to the *qui tam* complaint under what is now Rule 15(c)(1)(b) of the Federal Rules of Civil Procedure.[4]  Because "the seal provision of § 3730(b) deprives the defendant in an FCA suit of the notice usually given by a complaint," the Second Circuit held, "any relation back of subsequent filings to the original complaint is incompatible with the core requirement of notice under Rule [15(c)(1)(B)]."  *Id.* at 268-70.[5]

---

[4]     At that time, the relevant provision was Rule 15(c)(2).

[5]     Notably, Baylor's second holding no longer governs relation back in the circumstances it directly confronted.  The Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, § 4(f)(2), 123 Stat. 1617 (2009), amended the FCA in a number of ways, including by adding the following provision:

> For statute of limitations purposes, any such Government pleading shall relate back to the filing date of the complaint of the person who originally brought the action, to the extent that the claim of the Government arises

With respect to this question of timeliness, the Court concludes that the original sealed complaint tolled the applicable statutes of limitations. The *Baylor* decision is inapposite here: it considered how the relevant statute of limitations should apply to the Government's eventual complaint-in-intervention when it chooses to intervene in a *qui tam* action. *Baylor*, 469 F.3d at 268. But here the question is when a relator herself tolls the statute of limitations for her own claims. *Cf. id.* at 270 n.9 (citing with approval *United States ex rel. Downy* v. *Corning, Inc.*, 118 F. Supp. 2d 1160, 1171 (D.N.M. 2000), for the proposition that calculating the limitations period backward from unsealing the complaint, as opposed to filing the complaint, "'is contrary to the language, structure, and purposes of the FCA'").

Distinguishing between the relevant tolling date for a relator and for the Government is a sensible application of the structure of the FCA itself. A relator may commence a *qui tam* action unilaterally, 31 U.S.C. § 3730(b)(1), but after the action is brought cannot influence when the complaint is ultimately unsealed, *id.* § 3730(b)(3). There might have been good reason, though now statutorily obviated, to place the Government at peril of losing claims beyond the limitations horizon while it deliberately continued to prolong the period of

---

out of the conduct, transactions, or occurrences set forth, or attempted to be set forth, in the prior complaint of that person.

31 U.S.C. § 3731(c). Government complaints-in-intervention are now expressly permitted to relate back to the original complaint. The Court will discuss this statutory amendment, *Baylor*'s second holding, and their respective implications for Plaintiff's suit at length *infra*. *Baylor*'s second holding is, however, not relevant to the initial question of whether the statutes of limitations for Plaintiff's claims were tolled when she filed her original complaint, only with respect to whether an amended complaint could now relate back to that original complaint.

10

the action's pendency without notice to the defendant.  There is no valid reason to punish an otherwise diligent relator by stripping away claims when the Government, not the relator, is to blame for preventing the defendant from receiving notice of the action against it.  *See, e.g.*, *United States ex rel. Parikh* v. *Premra Blue Cross*, No. 01 Civ. 0476 (MJP), 2007 WL 1031724, at *3 (W.D. Wash. Apr. 3, 2007) ("It would also be unfair to penalize relators by barring their claims on timeliness grounds when they cannot control a court's decision to permit multiple extensions of the seal.").[6]  The statute of limitations for any claim pleaded in Plaintiff's original complaint was tolled when she filed that complaint.

Defendant also argues that because Plaintiff did not serve the complaint for some time after it was unsealed, the statute of limitations was not properly tolled even when the complaint was unsealed, but rather only when service was effected.  (Def. Reply 3).  However, "[i]n a suit on a right created by federal law, filing a complaint suffices to satisfy the statute of limitations."  *Henderson* v. *United States*, 517 U.S. 654, 657 n.2 (1996).  The Court has already concluded that this maxim applies for relators in the FCA context.

---

[6]    Even courts outside this Circuit that adopted *Baylor*'s holding often distinguished between the critical date with respect to the statute of limitations for a relator and the date relevant to the Government's eventual complaint-in-intervention.  *See, e.g.*, *United States ex rel. Ramadoss* v. *Caremark Inc.*, 586 F. Supp. 2d 668, 700 (W.D. Tex. 2008) ("Thus, the critical date for statute of limitations purposes for a relator is when the relator files a complaint.  However, the Court does not interpret this to allow the filing of a relator's complaint to begin the statute of limitations for the Government." (emphases omitted)); *see also United States ex rel. Cericola* v. *Fed. Nat. Mortgage Assoc.*, 529 F. Supp. 2d 1139, 1150-51 (C.D. Cal. 2007) (finding *Baylor* inapplicable to the timeliness of a *qui tam* plaintiff's claims because *Baylor* dealt only with the Government's complaint-in-intervention).

Admittedly, "[a]lthough filing an action in compliance with Rule 3 … stops the statute of limitations from running, such a filing does not toll the statute of limitations beyond the period for service provided by" Rule 4(m). *Labounty* v. *Coombe*, No. 95 Civ. 2617 (DLC), 2004 WL 830081, at *2 (S.D.N.Y. Apr. 13, 2004); *see also* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). But Plaintiff applied for and received from the Court's an extension to serve Defendant (Dkt. #15), as is permitted by Rule 4(m). *See* Rule 4(m); *see also Counter Terrorist Grp. U.S.* v. *New York Magazine*, 374 F. App'x 233, 234 (2d Cir. 2010) (summary order) ("Although a district court must grant an extension where good cause is shown, it may also grant a discretionary extension absent such showing." (citing *Zapata* v. *City of New York*, 502 F.3d 192, 196 (2d Cir. 2007))). Contrary to Defendant's claim, the statute of limitations was tolled from the time Plaintiff first filed her *qui tam* complaint until April 22, 2013. (Dkt. #15). Defendant acknowledges that the complaint was served before that date. (Def. Reply 3).

What this means is that no claim actually pleaded in the Amended Complaint would be time-barred, if timely when the original sealed complaint was filed. The FCA makes clear that a relator "bring[s]" a complaint when she files a *qui tam* complaint, not when that complaint is unsealed. 31 U.S.C. § 3730(b)(1); *see also* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a

complaint with the court.").  Holding otherwise would run athwart the FCA's structure of encouraging relators to file *qui tam* complaints promptly and thereafter affording ample time to the Government to conduct a complete investigation into the allegations of the complaint before deciding whether to intervene or to permit the relator to proceed independently in her *qui tam* action.

### b.  No Retaliation Claim Was Pleaded

In the alternative, however, Defendant contends that no retaliation claim was ever actually pleaded in this action.  (Def. Reply 2-4).  Defendant has been consistent in maintaining this position, as evidenced from the following colloquy with the Court on July 12, 2013:

> The Court: ... Is there not also a retaliation claim that would survive?
>
> [Counsel for Defendant]: Not in this complaint.
>
> The Court: Not in the complaint.
>
> [Counsel for Defendant]: It reads like a retaliation complaint.
>
> The Court: It does. Okay.
>
> [Counsel for Defendant]: But there's no retaliation claim.

(7/12/13 Tr. 10:14-20).  Neither Plaintiff, her former counsel, nor her putative successor counsel at the July 12 conference protested Defendant's characterization of the Amended Complaint or attempted to provide Defendant with notice that, in Plaintiff's view, a valid retaliation claim was pleaded.

Defendant's motion to dismiss addressed only the FCA claim and asked, given the obvious and uncontested inviability of that claim in light of Plaintiff's

*pro se* status, for the Amended Complaint to be dismissed in its entirety.  (Def. Br. 4).  Only after Plaintiff, in her opposition brief, asked the Court to "consider preserving [her] right to continue with the [r]etaliation section" of the Amended Complaint (Pl. Opp. 1), did Defendant address whether such a claim existed at all (Def. Reply 1-4).

As an initial matter, though Plaintiff is now proceeding *pro se*, the pleadings were drafted by her former counsel.  *Pro se* submissions are held to "to less stringent standards than formal pleadings drafted by lawyers...." *Haines* v. *Kerner*, 404 U.S. 519, 520 (1972).  But the solicitude courts extend to *pro se* litigants is a function of their necessary inexpertness in the law, not merely their status as uncounseled parties.  Where, as here, a submission was drafted and submitted by a lawyer, no extra tolerance is appropriate.  *See Thomas* v. *New York City Dep't of Educ.*, 938 F. Supp. 2d 314, 331 (E.D.N.Y. 2013) ("[T]he fact that Plaintiff is now *pro se* does not entitle her to any special latitude....  [A]ll of the pleadings in this case and in her prior actions were all drafted by counsel, as was the original complaint in this case.").  However, as Plaintiff now represents herself in this action, her opposition to Defendant's motion to dismiss does warrant the broad latitude afforded *pro se* submissions.

Plaintiff only pleaded a single claim for relief, predicated on violations of the FCA.  (Am. Compl. 8 ("As And For A First Claim for Relief[:] Violation of the False Claim Act"); *see also id.* at ¶¶ 40-44).  Nonetheless, as Defendant acknowledged at the July 12, 2013 conference, the complaint unquestionably "reads like" it also states a retaliation claim.  (7/12/13 Tr. 10:17).  A total of 43

14

paragraphs and subparagraphs in the Amended Complaint contain factual allegations (Am. Compl. ¶¶ 10-39); of those, 24 clearly allege retaliatory behavior (*id.* at ¶¶ 16-39).  Defendant nonetheless contends that it lackednotice that Plaintiff sought to bring a retaliation claim against it.

The Court agrees.  Complaints may contain substantial factual matter alleged for atmosphere or effect; plaintiffs need not prove the truth of every paragraph in a complaint to succeed in their suits.  After all, though the allegations Plaintiff stated in her complaint very well might substantiate a claim for retaliation under § 3730(h) of the FCA, they might also conceivably have been meant to state a claim for hostile work environment under Title VII of the Civil Rights Act of 1964 or even for a violation of the New York State whistleblower protection law, N.Y. Lab. L. § 740, under the Court's pendent jurisdiction.  There is no doubt, in the context of this motion, that Plaintiff now seeks to preserve a retaliation claim predicated on the FCA.  In her opposition to Defendant's motion to dismiss, she notes that "Subsection (h) of the [FCA] prohibits retaliation against employees who engage in protected activities" and requests that "the Retaliation section of the qui tam FCA [Complaint] be retained."  (Pl. Opp. 1).  But Plaintiff's pleading, drafted by counsel, in no way makes that clear.

The very reason for requiring plaintiffs to set forth specific claims in a "short and plain statement" is to permit defendants and courts to perceive the issues actually at bar rather than sifting the document for whatever claims might perhaps arise from the facts alleged.  *See Twombly*, 550 U.S. at 555.

15

Plaintiff stated a single claim here, irrespective of what superfluous facts she alleged: she sought recovery for violations of the False Claims Act.  No retaliation claim is currently alive in this case.

This is all the more clear given that Plaintiff actually had two bites at the apple here: she filed both the original sealed Complaint, and she filed an Amended Complaint after unsealing that was eventually served on Defendant. (Dkt. #6, 16).  Nor was the Amended Complaint merely an exact duplicate of the sealed complaint; Plaintiff made certain, albeit small and apparently insubstantial, changes to the document filed as the Amended Complaint and served on Defendant.  Yet neither of these documents contains a statement of any claim for relief apart from her *qui tam* claim.

However, as the Second Circuit has held, plaintiffs should generally receive an opportunity to amend their complaints when the defect resulting in dismissal flows from a failure to comply with Rule 8's "short and plain statement" requirement.  *Simmons*, 49 F.3d at 83.  This is especially the case where the allegations at issue would state a nonfrivolous claim if true.  *Id.*  And here Plaintiff has made a series of allegations which if true would likely, though not certainly, substantiate her claim for relief from retaliatory actions in violation of 31 U.S.C. § 3730(h).[7]  Accordingly in the normal course, Plaintiff

---

[7]    "To state a claim for retaliation under the FCA, plaintiff must plead that '[i] the employee engaged in conduct protected under the FCA; [ii] the employer knew that the employee was engaged in such conduct; and [iii] the employer discharged, discriminated against or otherwise retaliated against the employee because of the protected conduct.'" *Garcia* v. *Aspira of New York, Inc.*, No. 07 Civ. 5600 (PKC), 2011 WL 1458155, at *5 (S.D.N.Y. Apr. 13, 2011) (quoting *McAllan* v. *Von Essen*, 517 F. Supp. 2d 672, 685 (S.D.N.Y. 2007)).

should be extended the opportunity to amend her complaint in an effort to satisfy Rule 8.

### c.    Relation Back Is Unavailable

Granting Plaintiff leave to amend, however, would itself raise a new and different question: whether such an amendment would be futile because time-barred.  As detailed in the remainder of this subsection, the answer is yes.

The FCA contains a three-year statute of limitations for retaliation claims.  31 U.S.C. § 3730(h)(3).[8]  A Second Amended Complaint filed on, for example, May 30, 2014, could complain only of retaliatory actions taken on or after May 30, 2011.  The latest event Plaintiff identifies in her pleadings even potentially involving retaliatory action against her took place in 2010, and many took place in 2008 and 2009.  (*See* Am. Compl. ¶¶ 12, 13, 18).  Thus, at this point, any amended pleading that complained of those events without relating back to the original complaint would necessarily be time-barred.

Under the doctrine of relation back, "an amended pleading relates back to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable limitations period."  *Krupski* v. *Costa*

---

[8]    The current statute of limitations for FCA retaliation claims was enacted by amendments to the FCA via the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1079A, 124 Stat. 1376, 2079 (2010) (codified as amended at 31 U.S.C. § 3730(h)(3)).  "[A]pplying a new or amended statute of limitations to bar a cause of action filed after its enactment, but arising out of events that predate its enactment, generally is not a retroactive application of the statute."  *Vernon* v. *Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 889 (2d Cir. 1995).  That is especially the case here because "courts in this District previously applied to § 3730(h) claims a three-year limitations period borrowed from New York's residuary statute of limitations for personal-injury claims."  *Weslowski* v. *Zugibe*, No. 12 Civ. 8755 (KMK), 2014 WL 1612967, at *5 (S.D.N.Y. Mar. 31, 2014).  Thus, there is no question regarding the length of the applicable statute of limitations, though the events of which Plaintiff complains occurred before the passage of Dodd-Frank.

*Crociere S. p. A.*, 560 U.S. 538, 541 (2010) (internal quotation marks omitted). There are two forms of relation back identified in the Federal Rules of Civil Procedure that might apply here.  The first, under Rule 15(c)(1)(A), permits relation back when "the law that provides the applicable statute of limitations allows relation back."  The second, under Rule 15(c)(1)(B), permits an amendment to relate back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading."[9]

The following analysis is somewhat dense.  By way of a roadmap: the Second Circuit has ruled that, because "notice … is the touchstone of [Rule 15(c)(1)(B)] relation-back," *Baylor*, 469 F.3d at 270, it is simply not permissible for amended pleadings to relate back to original complaints filed under seal pursuant to § 3730(b)(2).  Though Plaintiff's amendment here would raise a retaliation claim, the action has so far proceeded under the seal provision applicable to *qui tam* claims and so, as the Second Circuit has instructed, Rule 15(c)(1)(B) relation back is unavailable.  Nor may Plaintiff avail herself of Rule 15(c)(1)(A): the statute of limitations for FCA retaliation claims does not affirmatively permit relation back as the rule requires.  Likewise, the FCA's structure does not implicitly permit relation back for retaliation claims.  In consequence, an amended pleading adding a retaliation claim may not relate back to the original complaint filed here: neither Rule 15(c)(1)(A) nor 15(c)(1)(B)

---

[9]     The third form of relation back under Rule 15(c)(1)(C) is not relevant here as Plaintiff does not seek to name a new party as a defendant in this action.

permits it.  Because Plaintiff's retaliation claim would be untimely absent relation back, it is time-barred and so the Court may not grant leave to amend.

### i.   Relation Back Is Not Permitted Under Rule 15(c)(1)(B)

The second holding in the *Baylor* case identified above limits the extent to which Rule 15(c)(1)(B) relation back can apply in *qui tam* actions.

> The secrecy required by § 3730(b) is incompatible with Rule [15(c)(1)(B)], because (as is well-settled) the touchstone for relation back pursuant to Rule [15(c)(1)(B)] is notice, i.e., whether the original pleading gave a party 'adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense.' ... By design, the seal provision of § 3730(b) deprives the defendant in an FCA suit of the notice usually given by a complaint. Because any relation back of subsequent filings to the original complaint is incompatible with the core requirement of notice under Rule [15(c)(1)(b)], continued running of the statute of limitations is warranted.

*Baylor*, 469 F.3d at 270; *see also United States ex rel. Deering* v. *Physiotherapy Associates, Inc.*, 601 F. Supp. 2d 368, 375 (D. Mass. 2009) ("The Second Circuit … has held that a claim brought outside the statutory limitations period cannot relate back to a complaint never served on the defendant.").  As explained above, this holding no longer extends as far as it once did, inasmuch as subsequent amendments to the FCA now expressly enable relation back for the Government's complaints-in-intervention under Rule 15(c)(1)(A).  But that amendment expressly extends relation back only to the Government's pleadings, not to those of the relator herself, and *Baylor* consequently states a proposition that endures: the Second Circuit said unambiguously in that case that Rule 15(c)(1)(B) relation back is simply unavailable in suits brought pursuant to § 3730(b)'s procedural requirements.

It is true that any amendment here would introduce a claim of retaliation rather than expanding Plaintiff's now-dismissed *qui tam* claim. These are obviously distinct classes of claim and courts have treated them differently for relation back purposes. *See, e.g.*, *Deering*, 601 F. Supp. 2d at 376-78. Until now, however, Plaintiff has solely pressed a *qui tam* claim, and in consequence her suit has the procedural characteristics of a *qui tam* action. Especially relevant here, Defendant did not receive notice of the action against it until April 2013. Thus, though retaliation claims are indisputably different from *qui tam* claims in numerous ways and as further discussed below, for Rule 15(c)(1)(B) purposes the Court cannot fairly distinguish between Plaintiff's potential retaliation amendment here and the *qui tam* action originally filed. Defendant did not receive notice of the action and so, *Baylor* unmistakably commands, Rule 15(c)(1)(B) relation back is unavailable.

### ii.   Relation Back Is Not Permitted Under Rule 15(c)(1)(A)

Rule 15 also separately permits relation back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). This distinction is critical as "notice is not a specific prerequisite of relation back in the [15(c)(1)(A)] context." *In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F. Supp. 2d 389, 398 (D. Mass. 2007). The Second Circuit in *Baylor* noted that, despite its concerns about the lack of notice occasioned by the FCA's sealing procedure, the statute as it was then written suggested "a colorable argument that the FCA implicitly permit[ted] a form of relation back that dispenses with the requirement of notice." 469 F.3d at 270

20

(internal quotation marks and alteration omitted).  Other courts explicitly concluded that the former version of the FCA permitted relation back under Rule 15(c)(1) for amended pleadings filed by relators.  *See United States ex rel. Ven-A-Care* v. *Actavis Mid Atl. LLC*, 659 F. Supp. 2d 262, 272 (D. Mass. 2009); *In re Pharm.*, 498 F. Supp. 2d at 398.

After these decisions, however, as discussed above, Congress amended the FCA to include an explicit relation back provision for Government complaints-in-intervention.  31 U.S.C. § 3731(c).  One might argue in consequence that it is no longer possible to say, as the Second Circuit did in *Baylor* prior to this amendment, that "that FCA implicitly permits a form of relation back" under Rule 15(c)(1)(A):  the FCA now explicitly permits a form of relation back under Rule 15(c)(1)(A) that unmistakably benefits *only* the Government and not relators.  Illustratively, the District of Columbia Circuit, examining an FCA suit in light of this amendment, came to exactly that conclusion: a relator may not "take advantage of the [new] relation back provision in the FCA, which applies only to the Government's pleadings," and the amended pleadings of individuals raising *qui tam* claims could only properly relate back under Rule 15(c)(1)(B).  *United States ex rel. Miller* v. *Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 883 (D.C. Cir. 2010).  The FCA taken as a whole can no longer fairly be read to provide implicit support for Rule 15(c)(1)(A) relation back for the claims of relators.

Of course the amendment at issue would involve pleading a new retaliation claim, not a *qui tam* claim.  The two are not procedurally identical.

21

The Supreme Court ruled in 2005 that the statute of limitations provided in the FCA for *qui tam* claims did not apply to claims of retaliation, meaning that FCA retaliation claims were then subject to the most analogous state-law statute of limitations. *Graham County Soil & Water Conservation Dist.* v. *United States ex rel. Wilson*, 545 U.S. 409, 415 (2005). And after the 2009 FERA amendments to the FCA introduced an explicit relation-back provision for complaints-in-intervention by the Government, the 2010 Dodd-Frank FCA amendments subsequently created a separate statute of limitations for FCA retaliation claims that, like the former statute of limitations for *qui tam* claims, includes no relation back provision. 31 U.S.C. § 3730(h)(3). Thus if "the law that provides the applicable statute of limitations" is properly viewed in the narrow sense as § 3730(h) alone, that law does not permit relation back for retaliation claims at all. Fed. R. Civ. P. 15(c)(1)(A).

Moreover, unlike the former statute of limitations for *qui tam* claims, it is not possible to say, as the Second Circuit did in *Baylor*, that the new statute of limitations for FCA retaliation claims "implicitly" permits relation back. *Baylor*, 469 F.3d at 270. *Baylor* hinted, and other courts ruled, that the structure of the FCA — by requiring *qui tam* actions to be filed under seal and permitting the Government to extend that seal for extended periods even over the relator's objections — necessarily required permitting relation back for amended pleadings under Rule 15(c)(1)(A). Congress acquiesced in this conclusion with respect to the Government by amending the FCA to permit relation back for complaints-in-intervention.

But FCA retaliation claims arise under a distinct cause of action from that authorizing *qui tam* claims.  The Second Circuit has held that retaliation claims are not independently subject to the seal procedure that governs *qui tam* claims, with its attendant complications for the statute of limitations and relation back.  *United States ex rel. Pilon* v. *Martin Marietta Corp.*, 60 F.3d 995, 1000 (2d Cir. 1995); *see also Hutchins* v. *Wilentz, Goldman & Spitzer*, 253 F.3d 176, 188 (3d Cir. 2001) ("[E]mployees need not actually file a False Claims Act suit to assert a cause of action under § 3730.").[10]  Thus FCA retaliation claims need not be filed under seal and do not, as a structural matter, necessarily face potential Government-occasioned delay before the defendant can receive notice. And, in consequence, the FCA does not "dispense[] with the requirement of notice" for retaliation claims. *Baylor*, 469 F.3d at 270.  In other words, it is not possible to read an implicit authorization for relation back for retaliation claims into the FCA's structure in the way that *Baylor* suggested might be possible for *qui tam* claims.  And, as already noted, the statute of limitations specifically governing retaliation claims includes no express relation back provision.  There is no way to view the FCA by which relation back under Rule 15(c)(1)(A) is available for FCA retaliation claims.

There may appear to be tension in concluding that "implicit" authorization for Rule 15(c)(1)(A) relation back is unavailable for retaliation

---

[10]    Indeed, given the differences in posture and procedural requirements between a retaliation suit and qui tam action, a plaintiff can file separate actions pursuing these claims independently.  *See, e.g.*, *United States ex rel. Lusby* v. *Rolls-Royce Corp.*, 570 F.3d 849, 852 (7th Cir. 2009).

claims because the FCA does not require that they be filed under seal, while simultaneously holding that Rule 15(c)(1)(B) relation back is unavailable here because this action was filed under seal.  But careful consideration of the separate analyses required by the two provisions of Rule 15 makes clear that there is no inconsistency between those outcomes.  Whether Plaintiff may rely on Rule 15(c)(1)(B) depends on the history of the prosecution of this case.  As the Second Circuit has explained, notice is the "touchstone" of analysis under Rule 15(c)(1)(B), *Baylor*, 469 F.3d at 270, and determining whether a party had adequate notice of a claim against it is always a factual question.  Here the pleadings never stated a retaliation claim and the action was brought pursuant to a statutory process that deprived Defendant of notice.  *Baylor* flatly prohibits Rule 15(c)(1)(B) relation back for a retaliation claim in a case with this posture.

Determining whether Rule 15(c)(1)(A) is available, in contrast, turns not on how the action was prosecuted, but on the statute at issue: whether relation back is explicitly or implicitly authorized by the language and structure of the relevant law itself.  *See, e.g.*, *Baylor*, 469 F.3d at 270 & n.9.  Regardless of how a retaliation claim under § 3730(h) was prosecuted, the answer would always be the same: because the FCA does not require retaliation claims to be filed under seal, there is no implicit expectation that such claims would benefit from relation back.  And the statute of limitations enacted for retaliation claims via the 2010 Dodd-Frank amendments does not explicitly authorize relation back, either.  Rule 15(c)(1)(A) simply does not apply to FCA retaliation claims.

24

Plaintiff's pleading cannot fairly be read to contain a claim for retaliation in violation of the FCA.  The statute of limitations precludes Plaintiff from introducing a new retaliation claim now.  No amendment introducing a retaliation claim could relate back to the original complaint under any provision of Rule 15.  Even were the Court to grant Plaintiff leave to amend her suit to introduce a retaliation claim, that amendment would be futile: it could not survive a motion to dismiss because it would be time-barred.  Accordingly the Court must grant Defendant's motion to dismiss in its entirety.

## CONCLUSION

For the reasons set out above, Defendant's motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 34 and to close the case.

SO ORDERED.

Dated:      May 16, 2014
            New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge